Dear Mr. Simon:
In your letter of July 6, 1993, you indicated that you had relied upon Opinion 90-149 of this office in your rendering of advice to the City of New Iberia in your capacity as City Attorney.
Opinion 90-149 dealt with the issue as to whether R.S.33:405 A(13), of the Lawrason Act, would operate to deny a municipal councilman, who was selected by his fellow councilmen to be mayor pro tempore, the right to exercise his power to vote as a councilman when he is acting as mayor pro tempore. Opinion 90-149 concluded that the mayor pro tempore may not vote in his capacity as a councilman while presiding over a meeting of the council as mayor pro tempore. The author reasoned that because the Lawrason Act provides that the mayor, when presiding over a council meeting, may only vote to break a tie, the mayor pro tempore, in the absence of the mayor may only perform the duties of the mayor. The rationale of Opinion 90-149 was that in the mayor's absence, the councilman/mayor pro tempore assumes the executive office of mayor and thereby becomes disqualified from exercising his legislative duties. Thus, the mayor pro tempore could only vote in the event of a tie vote of the council. The author of 90-149 relied upon a prior Attorney General's Opinion reported as, opinions of the Attorney General, 1944-1946, p. 616.
In the reported opinion it should be noted that the facts reflect that the municipal by-laws of the Town of Lockport required the convening of a minimum of the mayor and two councilmen. The opinion concluded that if one alderman and the mayor were both absent that the quorum could not be established because the municipality's rules of order required the convening of at least three persons. The rationale of that opinion does not clearly support the conclusion in Opinion 90-149 although it does allude to a provision in the Lawrason Act.
On reconsideration of Opinion 93-398 we now examine whether Opinion 90-149 is distinguishable from opinion 93-398, in light of the fact that New Iberia is governed by a special legislative charter.
The Lawrason Act provision R.S. 33:405 A(3) reads in pertinent part as follows:
(3) The board of aldermen shall select one of the aldermen to be mayor pro tempore, who shall preside at all meetings in the absence of the mayor, have the same power, and perform all duties of the mayor in the absence or disability of the mayor, except the veto power of the mayor. (Emphasis added).
The New Iberia Charter provision reads in pertinent part as follows:
(3) Mayor pro tempore. The trustee elected at large shall serve as mayor pro tempore, who, in the absence or inability of the mayor to act, shall exercise all the rights and powers of the office of mayor. (Emphasis added).
According to the two provisions quoted, the following is a summary of mode of selection and powers and functions of the mayor pro tempore.
LAWRASON ACT NEW IBERIA CHARTER 1. Board of aldermen select one 1. Trustee at-large ex officio of their members to be mayor is mayor pro tempore. pro tempore.
2. Presides at meeting in 2. Serves as mayor pro tempore mayor's absence. in mayor's absence or inability. (Sec. 14 of New Iberia Code 3. Has mayor's powers in his provides that the mayor presides absence. over meetings of the Board of Trustees).
4. Performs mayor's duties in 3. Exercises rights and powers his absence or disability. of mayor in absence or inability of mayor.
5. May not veto board's action.
We perceive no significant distinction between the mayor pro tempore's powers, functions and duties under the provisions of R.S. 33:405 or the New Iberia Charter. We are of the opinion that we must adhere to the conclusion reached in Opinion 93-398. First, we believe that Opinion 90-149 incorrectly reached the conclusion that because the mayor pro tempore "assumed" the office of mayor (due to the mayor's absence or inability) he was subject to incapacity to perform his legislative functions. We believe that conclusion is incorrect because nothing in the Lawrason Act (Title 33 of the revised statutes Section 321 et. seq.) indicates that the mayor pro tempore assumes the office of mayor. He is temporarily vested with only the ability to perform some of the mayor's powers, functions and duties. He cannot veto any action by the council as that power is always reserved to the office of mayor. Additionally, the separation of powers among three branches of government applies to state and not local governments (Article II, Louisiana Constitution).
In the absence of a specific statutory prohibitions that would prevent the mayor pro tempore from exercising his power to vote as a councilman he must be deemed to have retained that power. Otherwise, where a councilman is selected from a subdistrict within the municipality his constituency would be without representation which presents equal protection — one-person-one-vote complications. Furthermore, a crafty mayor might purposefully absent himself from any meetings at which the council was to consider overriding the mayor's veto of a council action, thereby increasing the already difficult burden of obtaining a two-thirds vote of the membership of the council that is legally required for an override. Finally, we believe that should the Legislature have intended, in adopting the Lawrason Act, or in New Iberia's special legislative charger, to prevent the mayor pro tempore from exercising his power to vote as a councilman while presiding over the council as mayor pro tempore, that body would have adopted such expressed prohibitions.
Therefore, it is our conclusion that whether according to the Lawrason Act or according to the New Iberia Special Charter a councilman, who is mayor pro tempore, may when presiding as such over a meeting of the municipal council, continue to exercise his power to vote as a councilman. This may result in his voting to make a tie.
Thus, it is the opinion of this office that our conclusion in Opinion 93-398 is reaffirmed. Inasmuch as 90-149 is inconsistent, herewith it is recalled.
Regarding your remaining question where in the absence of the mayor, the mayor pro tempore of New Iberia sought not to vote when the Board of Trustees was considering the override of a mayor's veto and the vote was four for the override and two against the override, it is our opinion that unless there is an explicit charter provision that permits, reconsideration of the vote such may not be reconsidered.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: KENNETH C. DEJEAN Assistant Attorney General
KCD:ams:93-398A